IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:06-CV-260-FL

| | |
|---|---|
| HAROLD EATMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM** |
| v. ) | **AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the cross-motions of the parties for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. Plaintiff Harold Eatmon ("Plaintiff") filed this action seeking judicial review of the denial of his application for disability insurance benefits and supplemental security income payments. After a thorough review of the record and consideration of the briefs submitted by counsel, this court recommends that plaintiff's motion for judgment on the pleadings be granted, that defendant's motion for judgment on the pleadings be denied and that the case be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 15, 2003, alleging that he had been disabled since January 16, 2003, due to pain in his back and right hip. (A.R. 22, 231). The Commissioner denied his applications initially and upon reconsideration. Thereafter, plaintiff timely requested and appeared at a hearing before an administrative law judge ("ALJ"). (A.R. 22). In a decision dated May 22, 2006, the ALJ found that plaintiff was not disabled. (A.R. 29). On November 8, 2006, the Appeals Council denied plaintiff's request for review of the matter, rendering the

ALJ's decision a "final decision" for purposes of judicial review. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Plaintiff has commenced the instant action timely pursuant to 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C.§ 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also* 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. *See* 20 C.F.R.§§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the

claimant is not engaged in a substantial gainful activity, then at step two, the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listing of Impairments ("Listings") set forth in 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite impairment; if so, the claim is denied. However, if the claimant cannot perform past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. While the Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available to the claimant in the national economy, the use of a VE is not required if the Commissioner may avail himself or herself to the Medical-Vocational Guidelines, contained in 20 C.F.R.§ 404 Subpart P, App. 2 (the "Grids").

The Grids are administrative rules reflecting major functional and vocational cases which cannot be evaluated on medical consideration alone. 20 C.F.R.§ 404 Subpart P, App. 2 § 200.00(a). Each rule directs a conclusion as to whether the individual is disabled for those individuals whose characteristics match the criteria of a particular Grid rule. *Id.* If the claimant has no non-exertional impairments preventing him or her from performing a full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy the burden of

3

proof. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983).

In this case, plaintiff has alleged that the ALJ erred in his decision by: (1) relying on the grids after erroneously finding that plaintiff did not suffer from any significant non-exertional impairments; (2) failing to include a sit/stand option in plaintiff's RFC determination; (3) failing to provide sufficient reasoning in his adverse credibility assessment of plaintiff; and (4) erroneously concluding that plaintiff's testimony regarding his pain was sufficient reason to deny plaintiff's claim for benefits. Because this court recommends remanding this case for reasons related to the first issue, it does not reach the remaining issues addressed by the parties.

## FACTUAL HISTORY

### I.     ALJ's Findings

In reaching his determination, the ALJ proceeded through the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (A.R. 24). The ALJ proceeded to step two to determine whether plaintiff had a severe impairment or combination of impairments that significantly limited him from performing basic work activities. The ALJ found that plaintiff had the severe impairment of lumbar pain with history of L2 fracture. (A.R. 24). However, at step three, the ALJ determined that plaintiff's impairments, or combination of impairments were not severe enough to meet or medically equal one of the impairments listed in the regulations. (A.R. 24). Next, the ALJ determined plaintiff's RFC by considering all of plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence. (A.R. 24-25). In reaching his conclusion regarding plaintiff's RFC, the ALJ considered opinion evidence in the record

including that of plaintiff and his testimony concerning his back and hip pain. (A.R. 25). The ALJ concluded that plaintiff is unable to perform past relevant work but has the RFC to perform light work. (A.R. 24, 27). Accordingly, through the use of the Grids, the ALJ took administrative notice of the existence of a significant number of jobs within the national economy that plaintiff could perform. (A.R. 28).

## II. Plaintiff's Testimony at Administrative Hearing

The administrative hearing in this matter was held on February 27, 2006, at which time plaintiff was thirty-three years of age. (A.R. 40, 41). He testified that he was single and resided with his grandmother in a house in Wilson, North Carolina. (A.R. 40). Although plaintiff has four children each of them resides with their mother. (A.R. 41).

Plaintiff last worked in 2003 when he was employed as a roll tender replacing rolls of paper on a print machine. (A.R. 42). Plaintiff's prior employment included jobs as an electrician's helper and a general laborer in a factory assembly line. (A.R.43, 44).

Plaintiff testified that he experiences pain in his hip and back and that his vision is partially impaired. (A.R. 46). Plaintiff's physician, Dr. Miller, placed him on injection treatment in order to relieve the pain in his back and hip. (A.R. 46). Dr. Ascot, plaintiff's primary care physician, referred plaintiff to physical therapy. (A.R. 48). Plaintiff had also been referred to Dr. Bawja, a physician at the spinal pain clinic at the University of North Carolina. (A.R. 49-50). At the time of the hearing, plaintiff had ongoing appointments for treatment at UNC. (A.R. 60). Plaintiff was prescribed pain medication, muscle relaxers and a Transcutaneous Electrical Nerve Stimulation ("TENS") machine. (A.R. 49). Plaintiff said that he wears the TENS machine when he is in pain, which he said was most of the day. (A.R. 50, 51). Plaintiff indicated that the

TENS machine and pain medications alleviate some of his pain, but that the pain returns when he is active. (A.R. 51, 52, 53). Plaintiff testified that he spends the majority of the day at home sleeping because the medication he takes has side-effects which make him tired. (A.R. 58).

Plaintiff testified that his hip and back cause him pain when he stands preventing him from standing for long periods of time. (A.R. 53). Plaintiff stated that he begins to feel pain as soon as he stands. He testified further that he can sit for only 20-30 minutes and that the pain also bothers him when he walks after about 20-30 minutes. (A.R. 54). Plaintiff stated that because of the pain, he is constantly changing positions and that he is unable to sit or stand for a long period of time. (A.R. 54). He said he experiences pain even laying down and does not sleep well because of back and hip pain. (A.R. 55).

Regarding his eyes, plaintiff testified that he had been diagnosed with glaucoma and that he had only partial vision in his left eye. (A.R. 55, 56). He indicated further that elevated pressure in his eyes contributed to his vision loss and that he takes medication to reduce the pressure. (A.R. 56, 57). He stated that vision in his left eye is blurry and that if he were working his job on the assembly line, his impaired vision would interfere with his ability to perform his job. (A.R. 58).

Plaintiff testified that he lives with his grandmother because he has no income and cannot afford his own place. (A.R. 62). As for chores, his mother, brothers and sisters come by and help perform household chores. (A.R. 63). Plaintiff said that he helps with laundry and cooking. (A.R. 63). He attends church services when he is able to do so. (A.R. 64). Plaintiff does not drive because he does not own a car. (A.R. 63-64). As for hobbies, plaintiff spends his time watching television and assisting his grandmother when she needs help. (A.R. 64).

Stephen Carpenter, a purported vocational expert, was sworn in by the ALJ at the administrative hearing, but was not called upon to testify. (A.R.39).

## DISCUSSION

### I. The ALJ has failed to adequately explain his findings as to the impact of plaintiff's non-exertional limitations.

Plaintiff claims that his pain was a non-exertional impairment and that the ALJ should have consulted a vocational expert rather than mechanically applying the Grids in reaching his decision. This Court agrees.

If the claimant has no non-exertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof in step five of the sequential analysis. *Coffman*, 829 F.2d at 518; *Gory*, 712 F.2d at 930. The Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely an exertional impairment. *Gory*, 712 F.2d at 930. In the case of a claimant who suffers from non-exertional impairments or a combination of exertional and non-exertional impairments that prevent him from performing a full range of work at a given exertional level, the Grids may be used only as a guide. *Id.* at 931. In such a case, the Commissioner must prove through vocational expert testimony that jobs exist in the national economy which claimant can perform. *See Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); 20 C.F.R. § 404.1569a. A non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category. *Gory*, 712 F.2d at 930. Non-exertional limitations generally affect an individual's ability to meet the non-strength demands of jobs and include the ability to hold, grasp, kneel, stoop and crouch. 20

7

C.F.R. § 404.1569a(c). Pain is generally a non-exertional malady. *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir. 1984). If pain is a non-exertional condition, the ALJ should determine whether the pain affects the claimant's residual functional capacity to perform work for which the claimant is exertionally capable. *Walker*, 889 F.2d at 49.

In the instant case, the ALJ found that plaintiff's RFC allowed him to perform the full range of light work and that his RFC was not reduced by non-exertional factors. (A.R. 28). After reviewing the record, however, this court finds that this finding is not supported by substantial evidence. Rather, this court finds that there is considerable evidence to suggest that plaintiff suffers from a non-exertional impairment, and that the ALJ failed to address this evidence in his decision.

Plaintiff's medical records indicate that he has a long history of chronic pain in his lower back. The records indicate further that despite medication, plaintiff continues to experience pain in this region of his body. (A.R. 370, 389, 392, 395, 397). Plaintiff continues to have difficulty flexing his lower back below the waist and has decreased range of motion. (A.R. 393). The medical record indicates that plaintiff has a non-exertional limitation of bending. Plaintiff has been advised by his treating physician not to bend from the waist. (A.R. 371). This restriction is uncontradicted by subsequent medical findings. Plaintiff has also been advised by his physical therapist to "stay away from bending." (A.R. 401). Most recent medical records indicate continued pain when bending and flexing at the waist. (A.R. 439, 442, 444). Plaintiff reported to his physician that his pain had worsened and interfered with his ability to walk, lift and perform his job. (A.R. 439).

In his analysis, the ALJ must provide specific findings whether a claimant suffers from a

8

non-exertional impairment. *Grant v. Schweicker*, 699 F.2d 189, 192-93 (4th Cir. 1983) (requiring the ALJ to make specific findings about the existence and effect of claimant's non-exertional impairment on claimant's RFC); *Fields v. Shalala*, 830 F. Supp. 284, 287 (E.D.N.C. 1993) (remanding case to Commissioner where the ALJ failed to include specific findings whether claimant suffered from non-exertional impairments); *Salisbury v. Heckler*, 601 F. Supp. 516, 522 (D. Md. 1985) (holding that the ALJ must make specific findings with respect to whether claimant's non-exertional limitations rose to the level of non-exertional impairments).

In this case, the ALJ has not adequately accounted for the non-exertional limitations suggested by plaintiff's medical records. In his discussion at step five of the sequential analysis, the ALJ has failed to confront these medical records and address the impact of plaintiff's non-exertional limitations on plaintiff's RFC. (A.R. 27). The ALJ ignores the uncontradicted bending restrictions that have been placed upon plaintiff by his physician and physical therapist. In his narrative supporting the application of the Grids, the ALJ provides reasons for the use of the Grids based on plaintiff's alleged exertional impairments and the general rule as to circumstances under which the Grids apply. (A.R. 28). The narrative would be appropriate if the substantial evidence in the record supported a finding of only exertional impairments. However, there exists substantial evidence of plaintiff's non-exertional limitations that should have been addressed by the ALJ. *See Grant*, 699 F.2d at 192; *see also Fields*, 830 F. Supp. at 287.

In its brief, the Commissioner argues that plaintiff may bend occasionally and therefore he has the RFC to perform light work. Def.'s Brf. at 11-12. However, the ALJ failed to articulate this view in his decision nor did the ALJ indicate that he considered the extent of plaintiff's non-exertional limitations and the extent to which they may have affected his RFC.

9

Because there is "substantial evidence tending to show the presence of non-exertional impairment[], . . . it was error for the ALJ not to make findings as to the existence of [] impairment[], and instead simply to apply conclusively the grid's Rules." *See Grant*, 699 F.2d at 192.

It is therefore recommended that this case be remanded to the Commissioner to consider the extent to which plaintiff's non-exertional limitations rose to the level of non-exertional impairments and prevented him from performing a full range of work. *See id.* at 192-93; *see also Fields*, 830 F. Supp. at 287. If the ALJ finds that plaintiff is unable to perform a full range of work attributable to a non-exertional impairment, then the ALJ must consider vocational expert testimony in order to determine whether jobs are available within the national economy that plaintiff could perform. *See Grant, supra*.

Because this court finds that remand is appropriate on this issue, it does not reach the other issues raised by the parties.

## **CONCLUSION**

Accordingly, for the reasons stated above, the court recommends that plaintiff's motion for judgment on the pleadings be granted and that defendant's motion for judgment on the pleadings be denied. This court recommends that the decision of the ALJ be vacated and that this case be remanded to the Commissioner to determine the effects of plaintiff's non-exertional limitations on his residual functional capacity.

The Clerk shall serve copies of this Memorandum and Recommendation upon counsel for the respective parties. The parties have ten (10) days after being served with this Memorandum and Recommendation to file written objections. Failure to file timely written objections bars an

10

aggrieved party from receiving a *de novo* review by the district court on an issue covered in this Memorandum and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

This, the 15th day of January, 2008.

/s/ Robert B. Jones
Robert B. Jones, Jr.
United States Magistrate Judge